UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PATRICIA PATRICK, | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-08-2629 |
| | § | |
| THE CITY OF HOUSTON, *ET AL.*, | § | |
| *Defendants*. | | |

## SUMMARY JUDGMENT OPINION

This employment dispute is before the court on defendants'[1] motion for summary judgment (Dkt. 64). The court held a hearing on June 29, 2010. Having considered the parties' submissions and argument of counsel, the court grants the motion.[2]

## Background Facts

The following facts are undisputed unless otherwise noted. Patricia Patrick began working for the City in January 2006 as an administrative coordinator in the Human Resources Division of the Convention and Entertainment Facilities Department (CEFD).[3] For the review period January 9, 2006 through April 24, 2006 she received a generally favorable employee performance evaluation (EPE) from her supervisor, Stephanie Bell

---

[1] Defendants in this case are the City of Houston, Lilliana Rambo, Brenda Bazan, and Dawn Ullrich (collectively referred to as defendants or City except where necessary to differentiate between them). Default was entered as to defendant Linda Hunter on November 24, 2009 (Dkt. 57). Plaintiff's claims against Hunter have been severed (Dkt. 72) so that final judgment may be entered in this case.

[2] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including entry of final judgment (Dkt. 21).

[3] She previously worked for the Houston Fire Department.

Williams, with an overall appraisal rating of 3.60, or effective.[4] Patrick's relationship with Williams soured in the months that followed amid complaints by Patrick that Williams was treating her unfairly and hindering her advancement.[5] As a result, Dawn Ullrich, Director of the CEFD, reassigned Patrick to the supervision of Linda Hunter.[6] Hunter's EPE for Patrick for the period August 2006 through November 2006 noted that Patrick "needs improvement" in interpersonal skills and teamwork, but gave her only a slightly lower overall appraisal rating of 3.41, still an "effective" rating.[7] In December 2006, Ullrich recommended Patrick receive a 9.1% salary increase due to increased responsibilities and changed duties.[8]   In March 2007, Patrick reported to the Office of Inspector General that Linda Hunter was conducting personal business on City time. Patrick previously had assisted Hunter in this endeavor by driving Hunter around.[9] On September 19, 2007, the OIG sustained several of Patrick's allegations of misconduct against Hunter.[10] Patrick contends that after she made her complaint about Hunter, Hunter and Williams began retaliating against her. Patrick's next performance review, which covered the approximately one-year

---

[4]   Plaintiff's ex. C.

[5]   *See* defendants' ex. 5.

[6]   Defendants' ex. 2.

[7]   Defendants' ex. 20.

[8]   Plaintiff's ex. E.

[9]   Plaintiff's ex. M.

[10]  Plaintiff's ex. O.

period May 7, 2006 through April 15, 2007, noted several areas in which Patrick needed improvement, but resulted in an overall appraisal rating of 3.08, or effective. Patrick strongly disagreed with the results of this evaluation.

On April 20, 2007, Patrick had a confrontation with a coworker, Ella Humphrey, over timesheets. Patrick accused Humphrey of assault and called the police. Patrick filed a criminal complaint against Humphrey.[11] Shortly thereafter, Patrick was transferred to the Parking Management Division of the CEFD.[12]

On August 24, 2007, Patrick complained to her supervisor in Parking Management, Derrick Williams, that a male employee, Reginald Calhoun, made a sexually offensive comment to her. Instead of immediately investigating, Williams instructed Patrick to return to work and to put her complaint in writing. Patrick sent an email to Williams at 4:58 p.m., which Williams promptly forwarded to his superior at 5:14 p.m..[13] About three weeks later, Williams conducted an unscheduled employee performance evaluation (EPE) of Patrick for the period April 23, 2007 September 14, 2007. That review resulted in an overall appraisal rating of 2.88, or needs improvement.[14]

---

[11] Plaintiff's ex. J. According the complaint, Humphrey ultimately pleaded "guilty/nolo contendre in a court of law." Dkt. 13 n.2.

[12] Plaintiff puts the date of transfer at April 23, 2007. Plaintiff's ex. O. Defendants contend she was transferred in May 2007. Defendants' motion, at 3.

[13] Defendants' ex. 19.

[14] Defendants' ex. 20.

On October 4, 2007, Patrick filed an OIG complaint about Calhoun's inappropriate sexual comment, Williams's alleged delay in investigating, and the unscheduled EPE.[15] On May 29, 2008, the OIG informed Patrick that it found insufficient evidence to sustain the allegations, although it did find that Williams failed to give Patrick an EPE plan when she began working in his department.[16]

On October 5, 2007, Ullrich reassigned Patrick to work from home "until further notice while we determine the status and terms of your continued employment with the Convention & Entertainment Facilities Department."[17] Patrick received full pay while on reassignment, but was required to be in her residence during work hours, and was required to call in at 9:00 a.m. and 3:00 p.m. to personally speak with a supervisor.[18]

On February 20, 2008, Ullrich placed Patrick on "indefinite suspension," citing violations of City policies requiring that employees demonstrate a considerate, friendly and construction attitude and prohibiting "flagrant insubordination." The suspension cites conduct by Patrick after the September 2007 unscheduled EPE[19]

---

[15] *See* defendants' ex. 15 (EEOC charge).

[16] Plaintiff's ex. R. The EPE plan apparently is a form outlining what is expected of an employee. *See* amended complaint (Dkt. 13), ¶ 15.

[17] Defendants' ex. 10.

[18] *Id.*; Plaintiff's ex. Q.

[19] Defendants' ex. 1.

Patrick appealed her indefinite suspension to the Municipal Employees of the City of Houston Civil Service Commission. The Civil Service Commission upheld the indefinite suspension on March 11, 2008.[20] On April 30, 2008, Patrick filed charges with the EEOC alleging harassment, discrimination, and retaliation based on her sex and her opposition to unlawful employment practices.[21] She filed this federal case on August 28, 2008. Plaintiff asserts causes of action for First Amendment Retaliation pursuant to 42 U.S.C. § 1983, retaliation in violation of Title VII, negligent training, supervision, and retention, and intentional infliction of emotional distress.[22]

**Summary Judgment Standards**

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001).

---

[20] Defendants' ex. 13.

[21] Patrick previously filed an EEOC charge for the period August 24, 2007 through October 5, 2007 for sex discrimination. Defendants' ex. 15. She added retaliation in the April 2008 charge. Defendants' ex. 14.

[22] The amended complaint does not include causes of action based on sex discrimination or hostile work environment.

"An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

The standard for granting summary judgment in Title VII cases is by now too familiar to warrant extended recitation. *Reeves v. Sanderson Plumbing Prods., Inc.*, succinctly summarizes the appropriate inquiry:

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law.

530 U.S. 133, 148-49 (2000). The court must draw all reasonable inferences in favor of the non-movant, and disregard all evidence favorable to the moving party that the jury is not required to believe. *Id.* at 150-51. Trial courts should not treat discrimination differently than other ultimate questions of fact for purposes of Rule 50 or 56. *Id.* at 148.

**Analysis**

    **1.**    **First Amendment Retaliation**

        **a.**    **No Vicarious Liability**[23]

A § 1983 claim cannot be based on *respondeat superior* or vicarious liability. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Only final decision-makers may

---

[23] In her summary judgment response, Patrick did not respond to defendants' arguments about municipal and vicarious liability.

be held liable for First Amendment retaliation under § 1983. *DePree v. Saunders*, 588 F.3d 282, 288 (5th Cir. 2009).

The City is liable under § 1983 only if an official policy or custom caused the deprivation of Patrick's First Amendment right. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) ("Under the decisions of the Supreme Court and this court, municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom"). The Fifth Circuit recognizes that a single decision may support municipal liability, but only if the decision was made by a final policymaker responsible for that activity. *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996). State law determines whether a particular individual is a final policymaker with regard to a particular decision. *Id.* Because Patrick was a civil service employee, the Civil Service Commission was the final decision-maker and final policy-maker regarding her indefinite suspension. *Brown v. City of Houston*, 337 F.3d 539 (5th Cir. 2003).

The City is entitled to summary judgment on Patrick's § 1983 claim of First Amendment retaliation because Patrick has not shown she was injured by an official practice, policy or custom of the City. Both the City and the individual defendants are also entitled to summary judgment on Patrick's § 1983 claim to the extent it is based on the adverse employment action of indefinite suspension because the Civil Service Commission

was the final decision-maker.[24] The court will consider the merits of Patrick's First Amendment claim against the individual defendants based on her transfer to the parking division of CEFD.[25]

### b. Elements of First Amendment Retaliation

To establish a First Amendment retaliation claim, a plaintiff must show that: (1) the employee suffered an adverse employment decision; (2) the employee's speech involved a matter of public concern; (3) the employee's interest in commenting on matters of public concern outweighs the defendants' interest in promoting workplace efficiency; and (4) the employee's speech motivated the defendants' action." *Depree v. Saunders*, 588 F.3d 282, 286-87 (5th Cir. 2009); *Harris v. Victoria ISD*, 168 F.3d 216, 220 (5th Cir. 1999).

Patrick asserts that she engaged in protected speech on a matter of public concern when she reported Hunter's illegal activities and filed criminal charges against Humphrey for assault. She alleges that she suffered the adverse employment action of transfer to a different department because of this protected speech, and her interest outweighs the City's interest in workplace efficiency.

---

[24] The CSC is not a defendant in this action.

[25] Patrick does not assert in her compliant or her summary judgment response that her reassignment to work from home was an adverse employment action for purposes of her First Amendment claim.

Assuming that Patrick engaged in protected speech,[26] she has not met her burden to show that she suffered a retaliatory adverse employment action. According to the affidavit of Dawn Ullrich, Ullrich made the decision to transfer Patrick from the Human Resources Division to Parking Management due to Patrick's conflicts with Hunter and Humphrey. Given that Patrick had lodged serious allegations of misconduct, including theft of City time, against Hunter, and had been assaulted by Humphrey, it was prudent to remove Patrick from that immediate environment. In fact, Patrick had requested a transfer to another department.[27] There is no evidence that the move was retaliatory. Moreover, under the circumstances, there is no basis on which a reasonable juror could conclude that Patrick's free speech interests outweigh the City's interest in workplace efficiency under the circumstances presented. For these reasons, defendants are entitled to summary judgment on Patrick's First Amendment retaliation claim.

## 2. Title VII Retaliation

In order to establish retaliation, Patrick must show that she participated in an activity protected by Title VII, that defendants took an adverse employment action against her, and that a causal connection exists between the protected activity and the adverse employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). In a retaliation case,

---

[26] *See Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006) (exposing governmental inefficiency and misconduct is a matter of considerable significance . . . but the First Amendment does not shield from discipline the expressions employees make pursuant to their professional duties).

[27] Defendants' ex. 2. Patrick alleges in her amended complaint that she requested a transfer from Hunter's department. Dkt. 13, ¶ 13.

an adverse employment action is one "that a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making a charge of discrimination." *Id.* at 559; *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 2415 (2006). Ultimately, Patrick must prove that the adverse employment action would not have occurred but for her protected conduct. *Strong v. University Healthcare Sys., L.L.C.*, 482 F.3d 802, 806 (5th Cir. 2007).

Patrick's Title VII retaliation claim is based on her August 24, 2007 report of a sexually inappropriate comment by Calhoun, and her complaint to OIG regarding her supervisor's allegedly untimely investigation of that report.[28] Shortly after Patrick reported the incident to her supervisor, Derrick Williams, he gave her an unscheduled EPE and rated her performance as "needs improvement." Then, the day after she filed her OIG complaint she was temporarily reassigned to work from home and a few months after that was terminated.

Williams has testified that he performed the September 2007 EPE because Patrick performed subpar work and had conflicts with Williams and her coworkers since being transferred into his department in April/May 2007.[29] Ullrich has testified that she reassigned Patrick to work from home because of her continued pattern of interpersonal problems, and

---

[28] Patrick cannot state a claim for Title VII retaliation based on her complaint against Hunter or her assault charge against Humphrey because those activities do not constitute opposition to any practice made illegal by Title VII.

[29] Defendants' ex. 4.

specifically in reaction to Patrick's show of blatant disrespect to Lillian Rambo when Rambo attempted to meet with Patrick to discuss the September 2007 EPE.[30] Patrick has no evidence that these explanations are pretext for retaliation. *Swanson v. General Serv. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (where the employer offers a nondiscriminatory explanation for both the adverse action and its timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real reason). Ullrich has testified that she did not know about Patrick's October 4, 2007 OIG complaint of sexual harassment at the time she reassigned Patrick.[31] Patrick's Title VII retaliation claim should be dismissed as to all defendants because she cannot create a fact issue as to the causal connection between her protected activity and any adverse employment action.

### 3. Negligent Training, Supervision, and Retention

A § 1983 claim for negligent training, supervision and retention against the City requires proof that an official City policy or custom was the moving force behind the deprivation of Patrick's constitutional rights. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). In addition, any such § 1983 claim requires proof that the defendant's deliberate indifference was the "closely related" cause of plaintiff's injury. *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994).

Ullrich is the only policymaker among the defendants. Plaintiff falls far short of showing any deliberate indifference by Ullrich to the proper training, supervision, or

---

[30] Defendants' ex. 2.

[31] Defendants' ex. 2.

retention of employees that is closely related to any harm to Patrick. The assault by Humphrey can hardly be linked to any failure of job training, and there is no evidence that Ullrich had any prior knowledge of a propensity by Humphrey to violence. The same can be said for Calhoun and Hunter. This claim should be dismissed.

### 4. Intentional Infliction of Emotional Distress

The elements of a cause of action under Texas law for intentional infliction of emotional distress are: (1) that defendant acted intentionally or recklessly; (2) defendant's conduct was extreme and outrageous; (3) defendant's conduct caused plaintiff emotional distress; and (4) the emotional distress was severe. *Hoffman-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004). Patrick has presented some evidence that she suffers from anxiety and depression and requires psychiatric treatment.[32] She has presented no evidence that defendants' actions were extreme or outrageous. Extreme or outrageous conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *S.W. Bell Mobile Sys., Inc. v. Franco*, 971 S.W.2d 52 (Tex. 1998).

A claim for intentional infliction of emotional distress does not lie for ordinary employment disputes. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999); *Zeltwanger*, 144 S.W.3d at 445. "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Zeltwanger*, 144 S.W.3d at 445.

---

[32] Plaintiff's ex. S.

Nothing Patrick has shown raises this case above the level of an ordinary employment dispute. Defendants are entitled to summary judgment on Patrick's intentional infliction of emotional distress claim.

**Conclusion**

For the reasons addressed above, defendants' motion for summary judgment (Dkt. 64) is granted. Plaintiffs claims are dismissed with prejudice. The court will issue a separate final judgment.

Signed at Houston, Texas on July 20, 2010.

*Stephen Wm Smith*
Stephen Wm Smith
United States Magistrate Judge